UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS RENEE JACKSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Y. A. YATES, et al.,<br><br>　　　　　Defendants. | Case No.: 1:11-cv-00080-LJO-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 129)<br><br>THIRTY-DAY DEADLINE |

**I.　　Introduction**

Plaintiff Curtis Renee Jackson ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's second amended complaint against Defendant Mendez for excessive force in violation of the Eighth Amendment; and against Defendants Daley, Samonte, Nichols, Valdez and Gonzales for failure to intervene in violation of the Eighth Amendment to the United States Constitution.

On July 24, 2014, Defendants filed a motion for summary judgment on the grounds that there is no evidence to support Plaintiff's excessive force claim against Defendant Mendez or to support his

1

failure-to-intervene claim against Defendants Daley, Samonte, Nichols, Valdez and Gonzales.[1] (ECF No. 129.) Plaintiff opposed the motion on October 2, 2014. (ECF Nos. 141, 143.) Defendants did not reply and the motion is deemed submitted. Local Rule 230(l).

## II. Defendants' Motion for Summary Judgment

### A. Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 129-9); see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

1    In arriving at these Findings and Recommendations, the Court carefully reviewed and
2    considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts
3    and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference
4    to an argument, document, paper, or objection is not to be construed to the effect that this Court did
5    not consider the argument, document, paper, or objection.  This Court thoroughly reviewed and
6    considered the evidence it deemed admissible, material, and appropriate.

**B.  Summary of Relevant Allegations in Plaintiff's Second Amended Complaint**

On February 2, 2010, at approximately 2:00 p.m., on C-Facility at Pleasant Valley State Prison, Plaintiff, a paraplegic, was approached by Defendant Mendez.  Defendant Mendez stated, "Put your hands behind your back."  (ECF No. 30, p. 7.)  Plaintiff responded, "I can't."  (Id.)  Plaintiff had a special chrono for waist chains/restraints.  Defendant Mendez maneuvered behind Plaintiff's wheelchair and grabbed both of Plaintiff's hands, forcing them together behind his back.  Defendant Mendez then escorted Plaintiff to the C-Facility Clinic for an examination.

En route to the clinic, Defendant Mendez stated, "You n[*****]s always start trouble around here, but I'm going to teach you[r] black ass a fucken lesson, just wait until we get inside the clinic." (Id. at p. 8.)  Plaintiff responded, "You don't scare me racist stupid ass Mexican."  (Id.)  Defendant Mendez then stated, "You are a crack baby bastard, you have no idea[] who you[r] father is, you[r] mother is a crack whore."  (Id.)  Plaintiff then stated, "My father passed away, my mother has never been a drug addict or a whore, don't ever disrespect my parent again."  (Id.)  Defendant Mendez then said, "Fuck you n[*****]s."  (Id.)

Approximately 2 ½ to 3 minutes after leaving Building 2, Plaintiff and Defendant Mendez entered C-Facility clinic.  Defendant Mendez placed Plaintiff inside a medical holding cage. Defendant Mendez also remained inside the holding cage.  Defendant Samonte, LVN, and Defendant Daley approached the holding cage where Plaintiff waited.  Defendant Samonte held a clipboard with an attached blank medical report.  Defendant Samonte asked Plaintiff questions, including if he had any injuries.  Plaintiff stated that his arm, chest and back hurt.  Defendant Samonte then asked if Plaintiff had any visible injuries to his body and asked Defendant Mendez to lift Plaintiff's shirt.  (Id. at pp. 8-9.)  Defendant Mendez then snatched Plaintiff out of his wheelchair and forcefully slammed

3

1  him down to the ground. In the process, Plaintiff's left shoulder and neck hit a wooden bench and his
2  head then hit the concrete ground. Defendant Mendez grabbed Plaintiff's ankles and began to drag
3  him across the concrete ground. Defendant Mendez also snatched off Plaintiff's shoes and pants,
4  while Plaintiff yelled that he was in pain. Defendant Mendez temporarily released the handcuffs and
5  instructed Plaintiff to get dressed. Once Plaintiff was dressed, Defendant Mendez again engaged the
6  handcuffs and assisted Plaintiff back into his wheelchair. Defendant Mendez then escorted Plaintiff
7  back to his housing unit without a medical exam or treatment. (Id. at pp. 9-10.)
8      Plaintiff alleges that the incident transpired in the presence of Correctional Officer Daley and
9  Licensed Vocational Nurse C. Samonte. Plaintiff alleges that Officer Daley and Nurse Samonte failed
10 to intervene and that Nurse Samonte failed to examine Plaintiff or have him seen by a doctor. Plaintiff
11 further alleges that C. Nichols, F. Valdez, and N. Gonzales, Licensed Vocational Nurses, arrived on
12 the scene during the alleged use of excessive force, but failed to intervene, failed to examine Plaintiff
13 and failed to have Plaintiff seen by a doctor. (Id. at pp. 10-14.)

**C. Statement of Undisputed Material Facts ("UMF")**

15     1. Plaintiff is an inmate in the custody of the California Department of Corrections and
16 Rehabilitation (CDCR). (Delgado Dec., Ex. A.)
17     2. Plaintiff was housed at PVSP at all times relevant to the claims in his Second Amended
18 Complaint. (Delgado Dec., Ex. A, Ex. C.)
19     3. On February 2, 2010, Plaintiff was arguing with several correctional officers in his
20 housing unit. (Delgado Dec., Ex. D.)
21     4. Plaintiff, who was cursing at the officers and being verbally aggressive, refused to
22 leave the area. (Delgado Dec., Ex. D.)
23     5. One of the officers sounded his personal alarm and additional staff arrived moments
24 later. (Delgado Dec., Ex. D; Mendez Dec. ¶ 3.)
25     6. Sergeant Mendez was one of the responding staff. (Mendez Dec. ¶ 3.)
26     7. As the ranking official on scene, Sergeant Mendez directed one of the officers to
27 handcuff Plaintiff. (Mendez Dec. ¶ 3.)
28

8. Afterwards, Sergeant Mendez wheeled Plaintiff from his housing unit to the Facility C medical clinic as required by institutional policy. (Mendez Dec. ¶ 4.)

9. Any time an inmate is handcuffed after a verbal or physical conflict with staff (as opposed to being cuffed for a routine escort, for example), the inmate is taken to one of PVSP's clinics to be evaluated by medical staff. (Mendez Dec. ¶ 4; Samonte Dec. ¶ 4.)

10. Medical staff talk with the inmate and conduct a visual exam to see whether the inmate has any injuries. (Mendez Dec. ¶ 4; Samonte Dec. ¶ 4.)

11. Medical staff complete a Medical Report of Injury or Unusual Occurrence (CDC Form 7219), documenting any complaints or injuries. (Mendez Dec. ¶ 4; Samonte Dec. ¶ 4.)

12. If an inmate presents in the clinic with a visible injury, it is documented on the CDC Form 7219. (Samonte Dec. ¶ 5.)

13. If further evaluation or treatment is needed, the doctor is notified immediately. (Mendez Dec. ¶ 4; Samonte Dec. ¶ 4.)

14. Sergeant Mendez secured Plaintiff in the ADA holding cell when the two men arrived at the clinic. (Mendez Dec. ¶ 5.)

15. The ADA holding cell is a special holding cell designed to accommodate inmates in wheelchairs. (Mendez Dec. ¶ 5.)

16. Sergeant Mendez stood inside the holding cell with Plaintiff while they waited for a nurse. (Mendez Dec. ¶ 5.)

17. When Mendez and Plaintiff were waiting in the holding cell, it was about 3:50 p.m. (Samonte Dec., Ex. A.)

18. Minutes later, Samonte approached from outside the holding cell. (Mendez Dec. ¶ 6.)

19. Nurse Samonte was carrying a clipboard, and she began completing a CDC Form 7219. (Mendez Dec. ¶ 6.)

20. Nurse Samonte began by asking Plaintiff several general background questions, such as his name, age, and housing assignment. (Mendez Dec. ¶ 6; Samonte Dec., Ex. A.)

21. Nurse Samonte then asked Sergeant Mendez to lift Plaintiff's shirt and remove his pants so that she could do a visual exam of Plaintiff's torso and legs. (Mendez Dec. ¶ 6.)

5

22. While Plaintiff was on the ground, Sergeant Mendez lifted Plaintiff's shirt up to his armpits so that Nurse Samonte could examine Plaintiff's torso, and he removed Plaintiff's pants and shoes so that Samonte could visually examine his legs. (Mendez Dec. ¶ 8.)

23. Plaintiff remained clothed in his boxer shorts and t-shirt throughout the examination. (Mendez Dec. ¶ 8.)

24. Nurse Samonte completed her medical evaluation at 3:55 p.m. (Samonte Dec, Ex. A.)

25. She did not note any injuries to Plaintiff's forehead, left leg, or anywhere on Plaintiff's body. (Samonte Dec., Ex. A.)

26. After the exam, Sergeant Mendez helped Plaintiff back into his wheelchair, and he wheeled Plaintiff back to his housing unit after nursing staff had medically cleared him. (Mendez Dec. ¶ 10.)

27. Nurse Nichols did not work in the Facility C clinic on February 2, 2010. (Nichols Dec. ¶ 2 & Ex. A.)

28. Rather, she was assigned to work in the Facility A medical/surgical clinic on that day. (Nichols Dec. ¶ 2 & Ex. A.)

29. On the PVSP campus, the Facility A medical/surgical clinic is located approximately 400-500 yards away from the Facility C clinic. (Nichols Dec. ¶ 4.)

30. Correctional Officer Daley worked on Facility C on February 2, 2010, but not in the medical clinic. (Daley Dec. ¶ 3.)

31. Instead, Daley was working as the Facility C gym rover on third watch that day. (Daley Dec. ¶ 3.)

32. As the gym rover, Daley would have been in the Facility C control office from 2:00 p.m. to 3:30-4:00 p.m. handing out and checking in equipment (e.g., keys, pepper spray, batons) during the 2:00 p.m. shift change from second watch to third watch. (Daley Dec. ¶ 3.)

33. After that, Daley would have been distributing inmate legal mail to all of the housing units on Facility C. (Daley Dec. ¶ 3.)

///

///

6

### D. Discussion

Despite receiving notice of the requirements for opposing a motion for summary judgment, Plaintiff did not submit a memorandum of points and authorities. Instead, Plaintiff submitted a response to Defendants' statement of undisputed facts, a declaration and four exhibits. (ECF No. 137.) A party bears the burden of supporting its motions and opposition with the papers it wishes the Court to consider and/or by specifically referencing any other portions of the record for consideration. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to scour the record for triable issues of fact. Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010). With these standards in mind, the Court now turns to the motion for summary judgment.

### 1. Excessive Force

Plaintiff alleges that Defendant Mendez used excessive force by (1) handcuffing Plaintiff behind his back; and (2) dumping Plaintiff out of his wheelchair and dragging him on the concrete floor. (ECF No. 137, pp. 9, 10.)

The relevant inquiry for this Eighth Amendment claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7, 112 S. Ct. 995, 998 (1992); Whitley v. Albers, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 1085 (1986). In making this determination, the court may evaluate "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." Whitley, 475 U.S. at 321, 106 S. Ct. at 1085; Marquez v. Gutierrez, 322 F.3d 689, 692 (9th Cir. 2003).

However, "not every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (quoting Hudson, 503 U.S. at 9, 112 S. Ct. at 1000). The Eighth Amendment's prohibition of cruel and unusual punishments "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 37-38. "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." Id. at 38.

1        As noted above, Plaintiff first alleges that Defendant Mendez used excessive force to handcuff
2   Plaintiff behind his back to transport him to the clinic despite a medical chrono for waist chains.
3   However, the undisputed facts demonstrate that Defendant Mendez did not handcuff Plaintiff on
4   February 2, 2010, in order to transport him to the medical clinic.  (UMF 5.) In his opposition papers,
5   Plaintiff admits that Defendant Mendez directed one of the responding officers to handcuff Plaintiff.
6   (ECF No. 137, p. 2, ¶ 5.)  Accordingly, the undisputed facts demonstrate that Defendant Mendez did
7   not use any force, much less excessive force, related to handcuffing Plaintiff on February 2, 2010, for
8   purposes of transporting him to the medical clinic.  The Court therefore finds that Defendant Mendez
9   is entitled to summary judgment on this portion of Plaintiff's excessive force claim.

10       Plaintiff next alleges that Defendant Mendez dumped Plaintiff from his wheelchair, causing
11  Plaintiff to hit his neck and shoulder on a bench and to hit his head on the concrete floor.  Plaintiff
12  further alleges that Defendant Mendez then dragged Plaintiff on the concrete floor and subsequently
13  removed Plaintiff's pants and shoes.  (ECF No. 137, p. 10; ECF No. 30, pp. 9-10.)  Defendant Mendez
14  denies the allegations, asserting that Plaintiff leaned forward and propelled himself out of his
15  wheelchair and onto the ground in order to avoid submitting to the visual exam by Defendant
16  Samonte.  (ECF No. 129-7, Mendez Dec. ¶¶ 7-8.)

17       Although Defendants acknowledge that Plaintiff's allegations ordinarily would be sufficient to
18  create a triable issue of fact, Defendants argue that there is an exception to the maxim that district
19  courts cannot resolve disputed issues of material fact.  Defendants refer the Court to Scott v. Harris,
20  550 U.S. 372, 127 S.Ct. 1769 (2007).  In Scott, the United States Supreme Court held that "[w]hen
21  opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that
22  no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of
23  ruling on a motion for summary judgment."  Id. at 380.  Defendants assert that the instant motion calls
24  for application of Scott because Plaintiff's rendition of events is contradicted by the record.  In
25  particular, Defendants argue that Plaintiff's assertion of injuries to his head and a scar on his left leg
26  from the fall from his wheelchair is contradicted because there were no visible injuries noted by
27  Defendant Samonte during an examination occurring contemporaneous with Defendant Mendez'
28  alleged use of excessive force.  (ECF No. 129-1.)

The Court finds that the "blatantly contradicted" analysis of Scott is inapplicable to this action. Scott involved videotape evidence that clearly contradicted the version of events told by the non-moving party. Id. at 378. In the instance action, however, there is neither videotaped evidence depicting the events at issue nor any other undisputed evidence clearly contradicting Plaintiff's claim that Defendant Mendez used physical force against him. Rather, Plaintiff has raised a genuine dispute of material fact regarding Defendant Mendez's alleged use of physical force.

Plaintiff has declared under penalty of perjury that Defendant Mendez "dumped Plaintiff out of [his] wheelchair . . .[and] in the process Plaintiff's neck, and shoulder hit the stationary sitting bench, head subsequently hitting concrete ground." (ECF No. 137, p. 10.) Plaintiff additionally alleges that Defendant Mendez then dragged Plaintiff by the ankles "across the cold dirty concrete ground." (Id.) Defendants admit that the parties dispute why and how Plaintiff came out of his wheelchair. (ECF No. 129-1, p. 3.) Plaintiff also has raised a factual dispute regarding his purported injuries, providing evidence that he received treatment for back pain following the incident. (ECF No. 137, Ex. C.)

Based on the foregoing, the Court will recommend that Defendants' motion for summary judgment be granted in part and denied in part on Plaintiff's Eighth Amendment excessive force claim against Defendant Mendez. Specifically, the Court will recommend that Defendants' motion for summary judgment be granted as to Plaintiff's allegations that Defendant Mendez used excessive force in handcuffing Plaintiff prior to transport to the clinic and be denied as to Plaintiff's allegations that Defendant Mendez dumped Plaintiff from his wheelchair and dragged him on the concrete floor.

### 2. Failure to Intervene

Prison officials are required "to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir.1982) (abrogated on other grounds by Sandin v. O'Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir.1995).

Defendants argue that Defendants Daley and Nichols were not assigned to work in the medical clinic on the date in question. However, Plaintiff declares under penalty of perjury that Defendants Samonte, Daley, Nichols, Gonzales and Valdez all were present in the clinic and failed to intervene

during the alleged use of excessive force by Defendant Mendez.  (ECF No. 137, p. 10.)  As such, the Court finds that Plaintiff has raised a genuine issue of material fact and will recommend that Defendants' motion for summary judgment be denied on this claim.

### III. Conclusion and Recommendation

For the reasons discussed above, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment, filed on January 1, 2014, be GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' motion for summary judgment be granted as to Plaintiff's allegations that Defendant Mendez used excessive force in violation of the Eighth Amendment to handcuff Plaintiff behind his back despite a waist chain chrono;

2. Defendants' motion for summary judgment be denied as to Plaintiff's allegations that Defendant Mendez used excessive force in violation of the Eighth Amendment by dumping Plaintiff from his wheelchair and dragging him on the concrete floor; and

3. Defendants' motion for summary judgment be denied as to Plaintiff's allegations that Defendants Samonte, Daley, Nichols, Gonzales and Valdez violated his Eighth Amendment rights by failing to intervene in the alleged use of excessive force by Defendant Mendez.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may "waive their right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **November 25, 2014**            /s/ Barbara A. McAuliffe
                                                  UNITED STATES MAGISTRATE JUDGE